UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN OSTRANDER,

    *Plaintiff*,

*v.*                       CASE NO. 12-CV-14436

COMMISSIONER OF           DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 12.)

Plaintiff Bryan Ostrander was 22 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 44.) Plaintiff's employment history includes work as a general laborer for one year. (Tr. at 147.) Plaintiff filed the instant claims on March 1, 2010, alleging that he became unable to work on January 18, 2008. (Tr. at 133, 136.) The claims were denied at the initial administrative stages. (Tr. at 73, 74.) In denying Plaintiff's claims, the Commissioner considered open wound of lower limb (soft tissue injury) as a possible basis for disability. (*Id.*) On April 21, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Craig R. Peterson, who considered the application for benefits *de novo*. (Tr. at 22-38, 39-72.) In a decision dated May 3, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 35.) Plaintiff requested a review of this decision on May 11, 2011. (Tr. at 18-19.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 30, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On October 6, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.      Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party");

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

## C.  Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

5

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through March 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since January 18, 2008, the alleged onset date. (Tr. at 27.) At step two, the ALJ found that Plaintiff's left lower extremity neuropathy, obesity, and dyslexia were "severe" within the meaning of the second sequential step. (*Id.*) At step

6

three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 27-28.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 33.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 18 years old, which put him in the "younger individual age 18 - 44" category. *See* 20 C.F.R. Part 404, Subpart P, App. 2. (Tr. at 33.)  At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 29-33.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 34-35.)

> **E.** **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated for an 8-10 inch and 3-4 inch deep laceration wound to his upper left thigh on January 18, 2008. (Tr. at 219-41, 252.)  The wound occurred when someone turned on a machine at his workplace and a metal piece flew out and cut Plaintiff in the left thigh. (Tr. at 246, 252.)  It was noted that there was "[n]o apparent vascular injury, positive movement, pulse 2+, possible tendon and muscular damage." (Tr. at 252, 255.)

Plaintiff participated in rehabilitative therapy for 7 treatment sessions. (Tr. at 258-98.)  Upon discharge in April 2008, it was noted that Plaintiff achieved "Indep[endent] HEP [home exercise program]" and that the therapist was "unsure that further physical therapy would benefit Mr. Ostrander due to his lack of progress thus far." (Tr. at 258.)

On January 22, 2008, Dr. Ciarlone, indicated that Plaintiff could work but with a limitation to a sitting job, with minimum walking. (Tr. at 248.)

On September 17, 2009, it was noted that Dr. Nahata's office called and stated that Plaintiff "cancelled appt [appointment] for 10-7-09 because his lawyer advised him against going."  (Tr. at 306.)

On October 19, 2009, Plaintiff was examined Paul LaClair, M.D., who noted that Plaintiff's current medication was extra strength Tylenol. (Tr. at 301, 312.)  Dr. LaClair noted that Plaintiff was 5'10" and weighed 227 pounds, making him "moderately overweight." (Tr. at 302, 313.)  Dr. LaClair also noted that Plaintiff's "[g]ait is antalgic with decreased stance phase on the left[,]" that Plaintiff had a scar on his left thigh which had "no surrounding edema, swelling or sign of other complicating process." (*Id.*)  Dr. LaClair found there was "altered sensation to a significant degree from the mid thigh anteromedially down to the medial calf approximately 10 cm below the knee joint" but that "[s]ensation at the medial ankle is intact" and that "[s]ensation in the foot is intact." (Tr. at 303, 314.)  Plaintiff's reflexes were "intact at the knees and ankles" and his "[s]traight leg raise is negative bilaterally." (*Id.*)  Dr. LaClair concluded that Plaintiff "has ongoing evidence of neuropathy involving the sensory nerves locally" and "has activity limitations including no prolonged standing or walking and sit down work only." (Tr. at 303, 314.)

At the administrative hearing, Plaintiff testified that he has a driver's license and that no doctor has restricted him from driving but that he did not have a vehicle at the time of the hearing. (Tr. at 45.)  Plaintiff also testified that he took regular classes during high school and graduated. (*Id.*)  Records confirm that Plaintiff was found "not eligible" for special education classes and completed the normal high school curriculum. (Tr. at 323-25.)

Plaintiff stated that he received the laceration to his left lower extremity in January of 2008 and that this is the only physical impairment that he has. (Tr. at 52-53.)  Plaintiff indicated he uses a cane for "[s]tability" and because it "helps relieve the amount of weight that I have to put on my leg." (Tr. at 53.)  When asked when he last took prescription medication for the pain in his lower left extremity, Plaintiff stated, "I don't remember." (Tr. at 53-54.)  Plaintiff indicated that his pain is "around" the injury site. (Tr. at 54.)  Plaintiff stated that the pain averages at a "[t]wo, three" and

8

that a "couple of times a month" it reaches "[a]bout a seven" and remains there for "[a] day or two." (Tr. at 55.)  Plaintiff testified that he cannot stand very long on his leg nor can he "walk very far or at all without my cane." (Tr. at 56.)  Plaintiff stated that he massages his leg and elevates his leg "every, ten, fifteen minutes or so." (Tr. at 56-57.)  Plaintiff stated that he could walk "[f]ifteen, twenty minutes, roughly." (Tr. at 57.)  Plaintiff testified that he dresses himself, does his "stretches and massages on my leg and then just lay around all day really." (Tr. at 58.)  Plaintiff watches television, especially music videos, and does laundry,[2] some cooking, shops at Walmart for groceries once a month[3] and is able to do so without his cane or an amigo cart, smokes a half pack of cigarettes per day, plays computer games, has an e-mail account, and has a Facebook page,  (Tr. at 59-62.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> can lift and carry up to 20 pounds occasionally, ten pounds frequently, can push and pull up to ten pounds occasionally, standing and walking would be limited to two hours out of an eight-hour day, but sit for up to six hours out of an eight-hour day with normal breaks.  There would be occasional stair and ramp climbing but no climbing of ropes, ladders or scaffolds.  No use of foot controls, no unprotected heights or dangerous machinery.  No working on uneven surfaces.  There would be no visual limitations or social deficits.  Work would not include complex written instructions due to his dyslexia.  There would be no limitations in concentration, persistence and pace.

(Tr. at 67-68.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform 3,000 document preparer, 1,300 lens inserter, and 2,000 telephone question clerk, unskilled, sedentary jobs available in the lower peninsula of Michigan.  (Tr. at 68-69.)  The ALJ then asked the VE to assume the exertion level were changed to 10 pounds occasionally, a sit-

---

[2]In his Daily Activity Report, Plaintiff indicated that he does laundry for five hours at a time. (Tr. at 165.)

[3]In his Daily Activity Report, Plaintiff indicated that he shops for 1 ½ hours at a time. (Tr. at 166.)

stand option at will, and work involving simple, routine, repetitive tasks, and work involving simple work-related decisions, and the VE responded that the document preparer work and telephone quotation clerk job would remain available but that the lens inserted job would not. (Tr. at 69.) The VE added that such a person could, however, perform the 1,200 parimutuel ticket checker jobs available in the lower peninsula of Michigan. (*Id.*) In response to the ALJ's question, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except that the DOT does not address a sit/stand option. (Tr. at 66, 70.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 29-33.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.      Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred as a matter of law in failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray Mr. Ostrander's impairments and by incorrectly concluding that Mr, Ostrander's disability did not arise before January 18, 2008." (Doc. 8 at 8-13.)

I suggest that substantial evidence supports the ALJ's findings.  Although Plaintiff suffered a serious laceration to his left upper thigh in January 2008 (Tr. at 219-41, 252,) there was "[n]o apparent vascular injury, positive movement, pulse 2+, possible tendon and muscular damage." (Tr. at 252, 255.)  In October 2009, Dr. LaClair found that Plaintiff's "[g]ait is antalgic with decreased stance phase on the left[,]" but that Plaintiff's scar had "no surrounding edema, swelling or sign of other complicating process." (Tr. at 302, 313.)  Dr. LaClair found "altered sensation" in Plaintiff's thigh to his middle calf area but also found that "[s]ensation at the medial ankle is intact" and that "[s]ensation in the foot is intact." (Tr. at 303, 314.)  Plaintiff's reflexes were "intact at the knees and ankles" and his "[s]traight leg raise is negative bilaterally." (*Id.*)

No doctor found Plaintiff disabled; instead, the doctors found him to be capable of sedentary work. Dr. LaClair concluded that Plaintiff "has activity limitations including no prolonged standing or walking and sit down work only." (Tr. at 303, 314.) This finding comports with Dr. Ciarlone's conclusion that Plaintiff could work but with a limitation to a sitting job, with minimum walking. (Tr. at 248.)

Dr. LaClair noted that Plaintiff's current medication was extra strength Tylenol. (Tr. at 301, 312.) At the administrative hearing, when asked when he last took prescription medication for the pain in his lower left extremity, Plaintiff stated, "I don't remember." (Tr. at 53-54.) Such modest treatment is inconsistent with a finding of disabling symptoms. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

As to Plaintiff's dyslexia, Plaintiff testified that he took regular classes during high school and graduated. (Tr. at 45.) Records confirm that Plaintiff was found "not eligible" for special education classes and completed the normal high school curriculum. (Tr. at 323-25.) Therefore, there is no evidence indicating that dyslexia was disabling alone or in combination with Plaintiff's other impairments.

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations discussed above and was in harmony with the objective record medical evidence and Plaintiff's own statements that he watches television, especially music videos, and does laundry,[4] some cooking, shops at Walmart for groceries once a month[5] and is able to do so without his cane or an amigo cart, smokes a half pack of cigarettes per day, plays computer games, has an e-mail account,

---

[4]In his Daily Activity Report, Plaintiff indicated that he does laundry for five hours at a time. (Tr. at 165.)

[5]In his Daily Activity Report, Plaintiff indicated that he shops for 1 ½ hours at a time. (Tr. at 166.)

and has a Facebook page. (Tr. at 59-62.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
_____

CHARLES E. BINDER

Dated: August 20, 2013                    United States Magistrate Judge


**<u>CERTIFICATION</u>**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: August 20, 2013              By____s/Patricia T. Morris_____

                                   Law Clerk to Magistrate Judge Binder